IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CHARLES HOPES, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.07-cv-101 DRH |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, FEDERAL BUREAU OF | ) |
| PRISONS, J. KEYS, MR. EBERHART, and | ) |
| MR. TEPOVICH, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATIONS**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by Chief United States District Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Federal Bureau of Prisons prior to filing this lawsuit.  It is **RECOMMENDED** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies, that the Motion for Summary Judgment filed by Defendants Keys and Eberhart (Doc. 115) be **GRANTED,** and that the Court adopt the following findings of fact and conclusions of law:

FINDINGS OF FACT

On February 5, 2007, the Plaintiff, a prisoner acting *pro se*, filed a complaint against a number Federal Bureau of Prisons ("BOP") employees alleging three counts of unconstitutional use of excessive force against him (Doc. 1).  On October 7, 2008, the District Court severed the three counts into separate cases (Doc. 82).  On November 5, 2009, the Court completed its threshold review of the complaint, finding that Plaintiff presented a claim for unconstitutional use of excessive

force against Defendants Keys, Eberhart, and Tepovich.  (Doc. 86).  Plaintiff claimed that Defendants Keys, Eberhart, and Tepovich assaulted him after he refused orders to remove a sheet from around his neck during an alleged suicide attempt on July 14, 2006, at the United States Penitentiary in Marion, Illinois ("Marion").[1]  In answering the complaint Defendants Keys and Eberhart raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies prior to filing suit, in violation of 42 U.S.C. §1997e(a) (Doc. 110).[2]  On August 6, 2009, Defendants Keys and Eberhart filed a Motion for Summary Judgment (Doc. 115) arguing that Plaintiff did not exhaust his administrative remedies prior to filing suit.  Defendants claimed that Plaintiff filed a request for administrative remedy regarding the July 14, 2006, incident that he appealed through the third step of the process by filing an appeal with the regional director (BP-10), but he did not complete the administrative process by filing a final appeal with the central office (BP-11).

In response, Plaintiff argues that he was denied administrative remedy forms and sensitive remedy forms by officers M. Collins, R. Madison, and W. Haygood (not defendants).  He argued further that these officers falsified dates, times, and documents; confiscated other legal documents; and allowed another inmate to destroy administrative remedy forms.  As a result, Plaintiff argues, administrative remedies were unavailable to him (Doc. 117).

---

[1] At some point after the July 14, 2006, incident, Plaintiff was transferred from Marion to the Administrative Maximum Institution in Florence, Colorado ("Florence").

[2] The United States Marshal Service experienced difficulty locating Defendant Tepovich for service of summons.  Defendant Tepovich was finally served on February 4, 2010.  His answer is not due until April 5, 2010.  At the February 23, 2010, *Pavey* hearing, the attorney for Defendants Keys and Eberhart did not yet know whether she would be authorized to represent Defendant Tepovich in the lawsuit.

*Pavey Hearing*

In light of the Seventh Circuit's opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the undersigned held a hearing in the matter on February 23, 2010, to determine whether Plaintiff had properly exhausted his administrative remedies.

At the hearing, Defendants presented declarations of three Bureau of Prisons employees. Marty Skuta, a Legal Instruments Examiner with duties at the United States Penitentiary in Marion, Illinois, declared that Plaintiff filed a request for administrative remedy (BP-9) on July 19, 2006. He appealed the warden's response to the regional director, but did not file an appeal to the central office (Doc. 115-1, pp. 1-2).

A. Fenlon, a Case Manager at Florence declared that central office administrative appeal forms (BP-11) were freely available to inmates. Between July 28, 2006, and October 23, 2009, Plaintiff filed 294 remedies, of which 72 were appeals to the central office. A. Fenlon did not recall that Plaintiff had ever complained that he could not receive central office appeal forms (Doc. 144, Exh. D).

R. Madison, a Correctional Counselor, declared that he acted as Plaintiff's counselor during the time he was incarcerated at Florence. He declared that during that time he regularly gave Plaintiff administrative remedy forms for all levels of the grievance process. Plaintiff filed 315 remedies during his time at Florence, 143 of which were regional appeals and 72 of which were central office appeals. He declared that Plaintiff was not denied administrative remedy appeal forms while at Florence (Doc. 146-1, pp. 1-2).

Defendants argued that of the four-step grievance process, Plaintiff completed only three steps and did not file a final appeal to the central office on a BP-11 form. Defendants also argued

that Plaintiff did not file a BP-8 at the beginning of the grievance process, but that Defendants were not relying on that failure in their argument that he did not complete the administrative remedy process (Doc. 153, pp. 9-10). The Defendants pointed out that in the original complaint, Plaintiff indicated that he was not able to complete the administrative grievance process because prison staff withheld his legal documents (Doc. 153, p. 12). In his amended complaint Plaintiff indicated that prison officials allowed another inmate to enter his cell and destroy his remedy forms (Doc. 153, p. 13). Defendants argued that Plaintiff's statements were inconsistent, and it was unclear whether staff prevented exhaustion by withholding documents or whether another inmate prevented exhaustion by destroying remedy forms (Doc. 153, p. 14).

The Plaintiff conceded that he did not file a BP-11 administrative remedy request to the central office as required to complete the administrative grievance process with the BOP (Doc. 153, p. 15). Plaintiff argued that another inmate, Andre Twitty, destroyed the BP-11 form he intended to use to appeal. Plaintiff explained that he intentionally set off the sprinkler in his cell in order to flood it. He placed his mattress over his administrative remedy forms to prevent them from getting wet. He conceded, however, that they may have gotten wet anyway. He further explained that he was removed from the cell and Twitty was allowed to enter it to clean up the flooding. He asserted that prison staff should have secured his property before allowing anyone in his cell. Plaintiff reported that prison staff was aware of a feud between Mr. Twitty and himself, but let Twitty into the cell anyway, and Twitty destroyed the form. He argued that W. Haygood, R. Madison, and A. Fenlon (not defendants) refused to provide him other BP-11 forms after the flooding incident. Thus, he argued, further administrative remedies became "unavailable" to him (Doc. 153, pp. 18-22).

Defendants presented a witness at the hearing, Richard Madison, the correctional counselor

at Florence. On direct examination, he testified that in his capacity as Plaintiff's correctional counselor he gave Plaintiff approximately 300 administrative remedy forms, including BP-11 forms for appeal to the central office. He testified that he never denied Plaintiff an administrative remedy form. He testified that there were occasions when he did not have a particular administrative form with him at the time he visited an inmate's cell, but he would provide the inmate with the form the following day. Mr. Madison testified that if Plaintiff received a BP-11 form he would not be limited to using it on a particular case. Mr. Madison also testified that he knew Plaintiff had complained of not being able to receive forms, but that he himself had not denied Plaintiff any remedy forms. (Doc. 153, pp. 25- 29).

On cross-examination, Mr. Madison testified that he did not refuse to provide Plaintiff with any remedy forms due to rumors of his misconduct. Plaintiff asked him whether he ever refused to provide administrative remedies to Plaintiff when Plaintiff "held hostage" his food trays. Mr. Madison testified that if Plaintiff was holding hostage his food trays, it constituted "disruptive behavior" and Mr. Madison would not have interfered with correctional officers dealing with that behavior to give Plaintiff remedy forms at that particular time. Upon further examination by Plaintiff, Mr. Madison testified that as part of the informal resolution process, it was his practice to ask an inmate the nature of his complaint prior to providing remedy forms. He also testified that if the Plaintiff was placed in restraints, then his property, including administrative remedy forms, was removed and returned to him when he was released from restraints. (Doc. 153, pp. 30-33).

Plaintiff argued that Mr. Madison denied administrative remedy forms when other unit employees informed him that Plaintiff was holding institutional food trays hostage or when Plaintiff flooded his cell or was kicking or shaking his cell bars. Plaintiff argued that at other times, Mr.

Madison would tell him he had no administrative remedy forms and that he would return with them, but he never returned. Finally, Plaintiff argued that Mr. Madison refused to provide remedy forms if he did not like what Plaintiff was going to complain about (Doc. 153, pp. 33-36).

### CONCLUSIONS OF LAW

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Federal prisoners must exhaust administrative remedies by following the guidelines set by the BOP. *See* 28 C.F.R. §542.10 et seq. Generally, an inmate incarcerated in a federal prison must

take the following four steps to exhaust his administrative remedies. First, he must attempt to resolve his grievance informally with the prison's staff. 28 C.F.R. §542.13. Second, after trying to resolve his concerns informally, he may submit a written Administrative Remedy Request (BP-9) to the Warden. 28 C.F.R. §542.14. These first two steps must be performed within 20 days of the incident about which the inmate complains. *Id.* Third, if his administrative remedy request is denied, he may appeal it to the appropriate regional director by submitting a BP-10 form. 28 C.F.R. § 542.15. And fourth, if the inmate is unsatisfied with the regional director's response, he may appeal that decision to the general counsel (BP-11). *Id.* While this four-step process is the normal route an inmate must utilize to exhaust his administrative remedies, if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if his administrative request became known at the institution, he does not have to send his administrative request to anyone at the prison. 28 C.F.R. §542.14. Instead, he can mark the request "Sensitive," explain why he did not submit his request to the prison, and send it directly to the appropriate regional director. *Id.*

## *Unavailability of Administrative Remedies*

Plaintiff concedes that he did not file an appeal to the central office and therefore did not complete the four-step grievance process. He argues, however, that his failure to complete the process was not his fault, but that conduct of prison officials prevented him from filing an appeal. As such, further administrative remedies were "unavailable" to him. Based upon facts adduced at the hearing, the Court disagrees, as discussed below.

An inmate is required to exhaust only those administrative remedies as are "available" to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300

F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13, 2009 WL 330531 (7th Cir. 2009). When remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy. *See Kaba v. Stepp*, 458 F.3d 678, 684 (2006).

As established at the hearing, Plaintiff did have a BP-11 form at one point. Plaintiff intentionally flooded his cell by activating the sprinkler system. He stated that he attempted to protect the remedy form from getting wet by placing his mattress over it. He conceded that it may have gotten wet anyway. As a result of his own misconduct, he was removed from his cell and another inmate was allowed in to clean up the flooding. Plaintiff claims this other inmate destroyed the remedy form. Plaintiff claims that after the flooding incident, grievance counselors would not give him any additional forms.

Based on these facts, the Court finds that Plaintiff caused any unavailability of administrative remedies. Plaintiff intentionally flooded his own cell. As a result, he was removed from his cell. During the process of cleaning the flooding, the form was either damaged or destroyed by another inmate. Regardless, the destruction of the form was a direct result of Plaintiff's own misconduct. Plaintiff cannot claim the prison made exhaustion of administrative remedies unavailable; his own misbehavior caused any unavailability. Plaintiff also argued that he was denied forms while "holding hostage" his food trays. By failing to comply with the reasonable condition that he behave, he was the "author" of any unavailability resulting from the misconduct. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005).

   The Court finds Plaintiff's further claims that administrative remedy forms were unavailable not fully credible.  Plaintiff did not dispute the Defendants' evidence showing that during the time of his incarceration at Florence, Plaintiff filed approximately 300 administrative remedy forms, at least 70 of which were appeals to the central office using BP-11 forms.  Thus, the Court finds doubtful Plaintiff's claims that BP-11 forms were "unavailable" to him.

   Therefore, based on the foregoing, the Court believes that Plaintiff caused the unavailability of remedies by his own affirmative misconduct.  Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** Plaintiff failed to exhaust available administrative remedies prior to filing suit, as he is required to do under 42 U.S.C. § 1997e(a).

## CONCLUSION

   For the reasons set forth above, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhausted his administrative remedies, that the Motion for Summary Judgment filed by Defendants Keys and Eberhart (Doc. 115) be **GRANTED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

   Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 2, 2010**

               *s/ Donald G. Wilkerson*
               **DONALD G. WILKERSON**
               **United States Magistrate Judge**